IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAFAEL ALBERTO CAPDEVILA MANZANO,

    Petitioner,

v.                                                                     2:26-cv-00133-KG-JFR

KRISTI NOEM, et al.,

    Respondents.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Rafael Alberto Capdevila Manzano's Petition for a Writ of Habeas Corpus, Doc. 1. Nathaly Capdevila is Mr. Manzano's sister and filed the petition on his behalf as his "Next Friend." Doc. 1 at 1. On January 23, 2026, the Court entered an Order to Answer, directing the Government to file a response within 10 business days. Doc. 3. When the Government failed to file a timely response, the Court issued an Order to Show Cause on February 6, 2026. *See* Doc. 5. The Government filed its response on February 9, 2026, acknowledging that its response was untimely. Doc. 6 at 1 n.1. Because Mr. Manzano's challenge presents a purely legal question, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and grants his petition for the reasons below.

### *I.     Background*

Mr. Manzano is a 24-year-old Cuban citizen who entered the United States in 2024. Doc. 1 at 3. Upon entry, an Immigration Judge ("IJ") granted him humanitarian parole pursuant to INA § 212(d)(5)(A), valid for one year, following a credible fear determination. *Id.* at 1.

On December 5, 2025, Mr. Manzano appeared for a routine immigration hearing, at which an IJ scheduled his next court date for 2027. *Id.* As Mr. Manzano was returning home,

1

Immigration and Customs Enforcement ("ICE") officers detained him at an internal Border Patrol checkpoint. *Id.* Mr. Manzano remains detained at the Otero Processing Center in New Mexico. *Id.* He claims his detention violates the Fifth Amendment Due Process Clause. *Id.*

## II.     *Standard of Review*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

## III.    *Analysis*

For the reasons below, the Court finds that (A) 8 U.S.C. § 1226 governs Mr. Manzano's detention, (B) Mr. Manzano's detention violates his right to due process, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

### A.     *Section 1226 governs Mr. Manzano's detention.*

The Immigration and Nationality Act ("INA") establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.). By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." Noncitizens "detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Pu Sacvin*, 2025 WL 3187432, at *1.

2

Consistent with the overwhelming majority of district courts to consider the issue and this Court's prior findings, the Court finds that § 1226 governs here. *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting 362 district-court opinions nationwide and noting that challengers prevailed in at least 350 of them, in decisions by over 160 judges across fifty courts); *Pu Sacvin*, 2025 WL 3187432 (Gonzales, J.); *Danierov v. Noem*, 2026 WL 45288, at *2 (D.N.M.) (Gonzales, J.). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted *or* who arrives in the United States." In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission" (emphasis added). Noncitizens "seeking admission" are those who have not "effected an entry" into the United States. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens "who entered the country years earlier" are not "seeking admission," and therefore fall under § 1226 rather than § 1225(b)(2)(A). *Pu Sacvin*, 2025 WL 3187432, at *3.

Under this framework, § 1226 governs Mr. Manzano's detention. ICE arrested Mr. Manzano approximately one year after his entry into the United States and did not apprehend him at or near the border. Doc. 1 at 1. Accordingly, the mandatory detention provision of § 1225 does not apply, because Mr. Manzano had already affected an entry into the United States by living here for a year. *Pu Sacvin*, 2025 WL 3187432, at *3. As the Government concedes, the facts of this case are "substantially similar" to those in *Patel v. Noem*, 2026 WL 103163 (D.N.M.), where this Court granted habeas relief. Doc. 6 at 2.

### B. *Mr. Manzano's detention violates his right to due process.*

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).

Here, Mr. Manzano has a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Danierov*, 2026 WL 45288, at *2. Mr. Manzano's release allowed "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Mr. Manzano was also entitled to procedural safeguards before he was redetained. In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To start, Mr. Manzano's private interest in remaining free from detention is substantial. "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

There is also a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking release. *Danierov*, 2026 WL 45288, at *2. Mr. Manzano was redetained after a year without a

4

bond hearing. Doc. 1 at 1. No assessment was made as to whether any material facts had changed, creating a substantial risk of erroneous deprivation of his liberty interest.

Finally, the Government's interest in detaining Mr. Manzano without a hearing is limited. Although the Government has an interest in ensuring Mr. Manzano's appearance at future immigration proceedings, detention has not been necessary to serve that interest so far. Mr. Manzano has complied with the conditions of his release since 2024—indeed, he was redetained while returning home from a routine ICE check-in. Doc. 1. Moreover, the administrative burden of providing a bond hearing is minimal. *See Danierov*, 2026 WL 45288, at *2 (the "cost of providing a bond determination is not terribly burdensome").

### C.   *The remedy is a bond hearing where the Government bears the burden of proof.*

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Manzano is a flight risk or danger to the community. Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Mr. Manzano's "unlawful detention in violation of his constitutional rights shifts that burden to the Government." *Pu Sacvin*, 2025 WL 3187432, at *3. A noncitizen's "strong private interest in being free from civil detention" outweighs the Government's "comparatively minimal burden to justify custody." *Id.*

### IV.   Conclusion

The Court therefore grants Mr. Manzano's petition, Doc. 1. The Court orders that the Government provide Mr. Manzano with a bond hearing under § 1226(a) before an IJ within seven days of this Order. At that hearing, the Government must justify Mr. Manzano's continued detention by clear and convincing evidence. If the Government fails to provide a bond hearing within that timeframe, it must release him.

The Court further orders the Government to file a status report within ten days of this Order confirming that it has provided Mr. Manzano with a bond hearing or released him.

IT IS SO ORDERED

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.